STATE of Missouri, Respondent,

v.

Roy W. THORN, III, Appellant.

No. 17868.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 26, 1993.

Motion for Rehearing and Transfer to Supreme Court Denied March 22, 1993.

Application to Transfer Denied
May 25, 1993.

Phillip A. Glades, Joplin, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found Roy W. Thorn, III ("Defendant") guilty of failing to return leased or rented property, § 578.150,[1] and assessed punishment at one year's imprisonment in jail and a fine to be determined by the court. The trial court imposed the jail sentence set by the jury and ordered Defendant to pay a $5,000 fine. Defendant appeals.

The property Defendant failed to return is described in the information as an "IBM Computer AS-400, B-30, With Peripheral Devices," owned by Newport Leasing, Inc., of Santa Ana, California.

■ The first of Defendant's three points relied on avers the trial court erred

in denying Defendant's motion for judgment of acquittal at the close of all the evidence in that "there was no written agreement providing for the leasing of the computer equipment which specified at what place and at what time the equipment was to be returned as required by section 578.150."

Section 578.150 [2] reads, in pertinent part:

1.  A person commits the crime of failing to return leased or rented property if, with the intent to deprive the owner thereof, he willfully fails to return leased or rented personal property to the place and within the time specified in an agreement in writing providing for the leasing or renting of such personal property.

. . . .

5.  Venue shall lie in the county where the personal property was originally rented or leased.

6.  Failure to return leased or rented property is a class A misdemeanor unless the property involved has a value of one hundred fifty dollars or more, in which case failing to return leased or rented property is a class C felony.

In determining whether the evidence is sufficient to support the conviction, we accept as true all evidence and inferences supportive of the verdict and disregard contrary evidence and inferences, ascertaining only whether a submissible case was made. *State v. Evans*, 802 S.W.2d 507, 514[12] (Mo. banc 1991).

So viewed, the evidence establishes that on November 23, 1990, Defendant was president of International Business Software Corporation, a Missouri corporation doing business at 1225 Range Line, Joplin, Missouri. On that date Defendant, as president of "I.B.S.C.," signed a "Master Equipment Lease." It named Newport Leasing, Inc. ("Newport") as lessor and "I.B.S.C." as lessee. We henceforth refer to the lease as "State's Exhibit 4," its designation at trial.

---

1.  References to statutes are to RSMo 1986.

2.  Section 578.150 was repealed by Laws of Missouri 1992, H.B. No. 958, and replaced by a new version, similarly numbered. Because the date

of Defendant's alleged violation of § 578.150 was February 10, 1991, the 1992 version is inapplicable.

State's Exhibit 4 set forth numerous terms, conditions, rights and obligations regarding the lease of equipment described in a separate document denominated "Equipment Lease Schedule." State's Exhibit 4 stated it also applied to "such other equipment which, by agreement, may from time to time be hereafter described on any supplemental schedule of leased equipment ... which may be annexed hereto and made a part hereof...." One of the provisions in State's Exhibit 4 read:

> All Equipment shall be installed upon the Lessee's premises at the location set forth in the Schedule hereto. Lessee shall not move the Equipment from such location without Lessor's prior written approval
>
> ....

Another provision in State's Exhibit 4 read:

> Upon the expiration ... of this Equipment Lease with respect to a particular item of Equipment, the Lessee at its expense shall return that item of Equipment ... to Lessor at such place within the continental limits of the United States as Lessor shall designate
>
> ....

Simultaneously with signing State's Exhibit 4, Defendant signed an "Equipment Lease Schedule" designated at trial as "State's Exhibit 3." It listed sundry items to be leased by "I.B.S.C." from Newport.

The duration of the lease set forth on State's Exhibit 3 was 60 days. The "monthly rate" was $3,500, to be paid in advance by a $7,000 "deposit."

Defendant sent State's Exhibits 3 and 4 to Newport, accompanied by a $7,000 check. An authorized agent of Newport signed State's Exhibits 3 and 4 on November 29, 1990.

Defendant's $7,000 check "bounced." Newport thereupon asked Defendant to "wire" the money. Defendant did so, sending $3,500 on December 4, 1990, and another $3,500 the next day.

Newport prepared a new "Master Equipment Lease" designated at trial as "State's Exhibit 5," and a new "Equipment Lease Schedule" designated at trial as "State's Exhibit 6." These documents identified the lessee as "International Business Software Corporation," 1225 Range Line, Joplin, Missouri. Newport sent the documents, unsigned, to Defendant for signature. Defendant, as president of International Business Software Corporation, signed them December 11, 1990, and returned them to Newport.

State's Exhibit 6 listed items identical to those on State's Exhibit 3, plus their serial numbers (omitted on State's Exhibit 3). The principal item on State's Exhibit 6 was a "9406 B30 SYSTEM UNIT* * S/N 22388." According to Albert Grasso, president of Newport, the number "9406" is IBM's number for an AS–400 computer; the number "B30" identifies the "specific model"; the number "22388" is the computer's individual serial number. Asked the size of the unit, Grasso replied, "The machine is roughly the size of a small refrigerator[.]"

State's Exhibit 6 showed a "monthly rate" of $3,500, a "base term" of two months, and a $7,000 "deposit." It contained this provision:

> Notwithstanding the terms of this lease agreement this lease is for fifty days only. The above equipment is to be available for pick up by Newport Leasing, Inc. by the 53rd day of possession of lessee or a daily rental fee of $300.00 per day thereafter becomes effective immediately.

Newport shipped the equipment listed on State's Exhibit 6 to Defendant. He signed an "Acceptance Certificate" acknowledging receipt of the equipment December 13, 1990. That document, designated at trial as "State's Exhibit 8," provides:

> Lessee certifies that ... the Equipment, set forth above, pursuant to Equipment Lease Schedule and Master Equipment Lease No. referenced above, is received and accepted by us ... and billing pursuant to the Master Equipment Lease is appropriate.

On December 18, 1990, Defendant sent Newport a letter stating, in pertinent part: "... we will accept the system lease to start today."

In "mid to late January," 1991, Newport's president, Grasso, phoned Defendant to make sure the equipment would be ready for pickup in early February. According to Grasso, he and Defendant agreed on a pickup date of February 8, 1991.

On Thursday, February 7, 1991, Grasso became concerned that the equipment was no longer at Defendant's place of business. Grasso phoned Pat Hayes, an investigator for the Jasper County Prosecuting Attorney, and asked him to go there and see whether the equipment was there.

Hayes arrived at Defendant's place of business at 2:10 p.m., that date and told Defendant he (Hayes) wanted to check the serial numbers on the equipment Defendant was leasing from Newport. Defendant requested Hayes to come back "after five o'clock."

Hayes left, then returned at 5:00 p.m., and was shown equipment by Defendant which, according to Defendant, was the equipment leased from Newport. Defendant showed Hayes serial numbers on several items. They corresponded to those supplied Hayes by Grasso. However, Hayes' suspicion was aroused because, in his words, "[T]he serial number tags had a very homemade look to them, they didn't look professional, they were cut at angles, they weren't rectangular, they were very unprofessionally prepared." Hayes asked Defendant to come to Hayes' office the following morning.

Defendant appeared at the appointed time, February 8, 1991. He insisted the equipment he had shown Hayes was the equipment leased from Newport and it was to be picked up by Newport on Sunday, February 10. Defendant informed Hayes he (Defendant) had offered the computer for sale to three different companies. Defendant added he had received $28,000 from one company, $20,000 from another, and $16,000 from the third.

Defendant returned to Hayes' office that afternoon (February 8) and stated he had not altered any serial numbers or put new serial number tags on the equipment. Defendant again indicated the equipment would be available for Newport to pick up Sunday, February 10, 1991.

Grasso sent a "trucker group" to Defendant's place of business Sunday morning, February 10, 1991, to pick up the equipment. Grasso testified:

I gave them specific instructions on what exactly we were going to pick up. And if that equipment was not there when they were there Sunday morning at Mr. Thorn's office, that they would immediately call me.

Q. Did they call you?

A. They called me Sunday morning.

Q. Did you contact Mr. Thorn?

A. Yes.

Q. And what did Mr. Thorn tell you?

A. ... he said that it's not the machine. He initially said well, it was the machine, and then he changed his story and said okay, it's not the machine. And I asked him where my machine was and he said he didn't know. And he wouldn't tell me where it was.

Investigator Hayes learned of these events and asked Defendant to come to his office Monday, February 11. Defendant did so. On this occasion, Defendant admitted the machine he had shown Hayes was not Newport's and "the serial number tags were ... bogus." Hayes' testimony:

[W]hen I asked him if he had placed the bogus tags on the machine, he said I'm not going to answer that.

Q. Did you ask him where the machine was?

A. I did and he refused to tell me.

None of the equipment listed on State's Exhibit 6 was ever returned to Newport.

Defendant testified at trial, September 20, 1991. During cross-examination, this exchange occurred:

Q. Where is ... this computer, where is it?

A. The components were probably divided up at a refurbishment center.

Q. I'm asking you: Where is the machine?

A. The machine went to Kansas City and the parts were divided up....

Q. Who did you sell the machine to in Kansas City?

A. Well, we had sold the machine to a firm in Kansas City ... a refurbishment center.

Q. Tell me the name of the firm.

A. I would have to get my contract to do that.

Under § 578.150.1, *supra*, the crime of failing to return leased property occurs when a lessee, with intent to deprive the owner thereof, willfully fails to return leased property "to the place and within the time specified in an agreement in writing providing for the leasing ... of such personal property." Defendant maintains there was no such written agreement here, consequently the evidence was insufficient to support the verdict. Defendant insists we should reverse the judgment and order him discharged.

The State responds that the statutory requirement of a written lease specifying the place and time for return of the leased property is met by State's Exhibits 4, 6 and 8, collectively.

As we have seen, State's Exhibit 4 (signed by Defendant November 23, 1990, and by an authorized agent of Newport six days later) states it applies to equipment which may thereafter be described on a supplemental schedule of leased equipment. State's Exhibit 4 also provides: (a) all leased equipment shall be installed on the lessee's premises at the location set forth in the schedule and shall not be moved from such location without Newport's written approval, and (b) upon expiration of the lease of any particular item, the lessee shall return it to Newport at the place Newport designates.

State's Exhibit 6 (signed by Defendant December 11, 1990) is a schedule of leased equipment. The computer in issue is the first item listed in the schedule. State's Exhibit 6: (a) shows the lessee's address as 1225 Range Line, Joplin, Missouri, (b) states the lease is for fifty days, and (c) provides the equipment shall be available for pickup by Newport by the fifty-third day of possession.

State's Exhibit 8 (signed by Defendant December 13, 1990) confirms he received possession of the computer that date pursuant to an "Equipment Lease Schedule" and "Master Equipment Lease."

■ A contract need not consist of only one written document. *Detko v. City of Plattsburg*, 791 S.W.2d 424, 425[2] (Mo. App.1990). A contract may be made up of several separate instruments. *State ex rel. Foster v. Griffin*, 246 S.W.2d 396, 398[5] (Mo.App.1952).

In the aggregate, State's Exhibits 4, 6 and 8 provide: the computer shall be installed at 1225 Range Line, Joplin, Missouri, and not be moved without Newport's permission; the computer is leased for fifty days; it shall be available for pickup by Newport by the fifty-third day after the lessee receives possession; Defendant received possession December 13, 1990.

Inasmuch as Newport never gave written permission for the computer to be moved from 1225 Range Line, Joplin, Missouri, and never designated anyplace other than that for return of the computer, we hold State's Exhibits 4, 6 and 8, collectively, satisfy the statutory requirement of a written agreement specifying the *place* where the leased property is to be returned. Together, the three exhibits require Defendant to return the computer to Newport by surrendering possession of it at 1225 Range Line, Joplin, Missouri, to a carrier dispatched by Newport.

■ Do State's Exhibits 4, 6 and 8 also satisfy the statutory requirement of a written agreement specifying the *time* within which the computer shall be returned to Newport? We say yes.

As noted earlier, State's Exhibit 6 provides the computer shall be available for pickup by Newport by the fifty-third day of the lessee's possession. State's Exhibit 8 establishes Defendant received possession of the computer December 13, 1990. The fifty-third day after December 13, 1990, was February 4, 1991. Because of Defendant's letter of December 18, 1990 (mentioned *supra*), which accepted the lease starting that date, Grasso agreed with De-

fendant in January on a pickup date of February 8, 1991. Inferably, because of Grasso's suspicion that the computer had disappeared, the pickup date was extended to February 10, 1991. Defendant's conversations with Hayes on February 8, 1991, demonstrate Defendant knew he was to return the computer to Newport by surrendering possession of it to the carrier February 10.

Analogous circumstances appear in *State v. Bugely*, 408 N.W.2d 394 (Iowa App. 1987). There, the accused was charged with theft by misappropriation of a rented automobile. One of the elements the prosecution had to prove was that the accused failed to return the vehicle within 72 hours after the time specified in a written lease. *Id.* at 396. The lease required the accused to return the vehicle September 16, 1985. He failed to do so, but called the lessor twice and obtained extensions to an ultimate deadline of September 27, 1985. He failed to return the vehicle that date and had no further contact with the lessor. The accused was arrested October 12, 1985, and the vehicle was recovered. On appeal, the accused argued the proof was insufficient to support his conviction in that the return date in the written lease was not the date he was required to return the vehicle and there was insufficient evidence to support a finding that September 27 was the final deadline. *Id.* After analyzing cases from other jurisdictions, the Court of Appeals of Iowa held the original lease satisfied the statutory requirement of a written lease specifying the time for return of the vehicle, and the evidence was sufficient to support the trial court's finding that September 27 was the ultimate deadline. In that regard, the appellate court noted the lessor's "status sheets" showed extension of the deadline to September 27, but not thereafter. *Id.* at 397.

The circumstances here are even stronger than *Bugely*. State's Exhibits 4, 6 and 8 establish an original return deadline of February 4, 1991, and Defendant admitted to Hayes on February 8, 1991, that the adjusted deadline was February 10, 1991.

Defendant argues, in essence, that no single document relied on by the State meets all the requirements of § 578.150.1. While that is correct, State's Exhibits 4, 6 and 8, collectively, constitute a written agreement providing for leasing of the computer. Together, they satisfy the statutory requirements.

Defendant points out that the "Master Equipment Lease" (State's Exhibit 4) and the "Equipment Lease Schedule" (State's Exhibit 6) have space for insertion of numbers so each can be referred to by the other and incorporated therein by reference, but the blanks are not filled in. We fail to see how that omission impairs the State's case, particularly inasmuch as Defendant concedes, "[T]he evidence clearly establishes that the parties conducted themselves as if the two documents were ... tied together." The record unequivocally shows only one computer system was leased by Newport to Defendant's corporation, and the evidence undeniably demonstrates the parties treated the two documents as components of a single lease.

Defendant also argues nothing in the documents required the computer to be kept at a specific location. Defendant points out the "Equipment Lease Schedule" (State's Exhibit 6) has blanks for showing "Location of Equipment" and they are not filled in. Therefore, says Defendant, there was nothing in writing specifying the place where he was to make the equipment available for pickup by Newport.

We disagree. As reported earlier, the Master Equipment Lease (State's Exhibit 4) provides all equipment shall be installed on the lessee's premises at the location set forth in the Equipment Lease Schedule. The latter document (State's Exhibit 6) shows the lessee's address as 1225 Range Line, Joplin, Missouri. There is no evidence Defendant's corporation occupied any "premises" other than those. There was no need to show the same address twice on State's Exhibit 6.

In sum, we find no merit in any argument advanced by Defendant in support of his first point. The point is denied.

■ Defendant's second point avers the conviction should be reversed because Newport "had agreed to sell [the computer equipment] at the same time it agreed to lease the computer equipment." By this contention, Defendant seeks to bring this case within *State v. Harrison*, 805 S.W.2d 241 (Mo.App.1991), and *State v. Ell*, 813 S.W.2d 26 (Mo.App.1991), which hold § 578.150 does not apply where a lease contains provisions for sale of the leased item to the lessee.

Defendant directs us to evidence showing he negotiated with Newport to buy equipment essentially the same as the leased equipment shortly before executing the lease. Therefore, says Defendant, he felt his corporation "was both buying and leasing the computer system."

State's Exhibits 4, 6 and 8 were all signed by Defendant after the sales negotiations. Nothing in those exhibits provides for a sale. Defendant conceded this at trial. Defendant presented no document signed by any representative of Newport providing for sale of the computer in issue. Indeed, cross-examination of Defendant produced this:

Q. ... I'm going to ask you ... that this transaction changed from a sale to a lease?
A. It changed from—we signed a lease, so I'm assuming yes.
Q. So the transaction changed from this sale to a lease; correct?
A. Yes.

Furthermore, Defendant's letter of December 18, 1990 (mentioned *supra*), accepts "the system lease."

The evidence clearly demonstrates that after the early negotiations, Defendant agreed with Newport that the computer would only be leased, not purchased. Accordingly, *Harrison* and *Ell* do not apply. Defendant's second point is meritless.

■ Defendant's final point asserts his conviction must be reversed because "Jasper County was not the county where the computer equipment was originally leased and [§ 578.150.5] specified venue was in that county." Defendant's theory, as articulated in the argument portion of his brief, is that the lease did not become effective until signed by Newport's agent in California, hence the computer was not "originally" leased in Jasper County, Missouri, but instead in California. Consequently, reasons Defendant, venue lay nowhere in Missouri.

We hold the issue is unpreserved for appellate review. This case began with the filing of a felony complaint March 7, 1991, in an Associate Division of the Circuit Court of Jasper County, Missouri. The record is bare of any objection to venue by Defendant until the State rested its case-in-chief in the jury trial. Having proceeded to trial without objection, Defendant waived any contention that venue did not lie in Jasper County. *State v. Wood*, 596 S.W.2d 394, 401[12] (Mo. banc 1980), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980).

Judgment affirmed.

PARRISH, C.J., and SHRUM, J., concur.