**Allan Edward ABRAMS,**
**Plaintiff–Appellant,**

v.

**FOUR SEASONS LAKESITES/CHASE**
**RESORTS, INC., Defendant–**
**Respondent.**

No. 20527.

Missouri Court of Appeals,
Southern District,
Division Two.

June 17, 1996.

Motion for Rehearing and Transfer to
Supreme Court Denied July 10, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Allan Edward Abrams, appellant, pro se.

Harvey M. Tettlebaum, Lowell D. Pearson, Husch & Eppenberger, Jefferson City, for respondent.

CROW, Judge.

This court dismissed an appeal in this case last year. *Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.*, 904 S.W.2d 37 (Mo. App. S.D.1995). We henceforth refer to that opinion as "*Abrams I.*"

To give the present opinion continuity with *Abrams I*, we again refer to the appellant, Allan Edward Abrams, as "Plaintiff," and to the respondent, Four Seasons Lakesites/Chase Resorts, Inc., as "Four Seasons."

The present opinion begins where *Abrams I* ends, hence *Abrams I* should be read as a preface to the present opinion.

After this court's mandate in *Abrams I*, Plaintiff dismissed the 14–count petition in the trial court against the four individual defendants identified in *Abrams I*. That cured the problem which caused dismissal of the appeal in *Abrams I*. Plaintiff and Four Seasons are now the only parties.

As explained in *Abrams I*, the dispute between Plaintiff and Four Seasons arises from Plaintiff's purchase from Four Seasons of an interest in a condominium unit and subsequent efforts to resolve disputes arising from that transaction. *Id.* at 38. Plaintiff maintains he and Four Seasons agreed to resolve the wrangle by arbitration. *Id.* Plaintiff's "Motion to Compel Arbitration," quoted in pertinent part in *Abrams I*, *Id.*, prayed the trial court for an order compelling the parties to arbitrate.

The trial court denied the motion, finding: "Plaintiff has failed to prove the existence of a valid agreement between the parties to arbitrate." *Id.* Plaintiff brings the present appeal—like the appeal in *Abrams I*—from that order.

The lone point relied on in Plaintiff's brief avers the trial court erred in denying the motion to compel arbitration in that "the parties had entered a written agreement to arbitrate by virtue of a series of correspondence, which agreement is enforceable under the Uniform Arbitration Act, §§ 435.350 through 435.470 R.S.Mo. [1986 [1]]." The point urges us to "reverse the trial court's final Order as based on an erroneous declaration or application of law."

Inexplicably, the point provides no clue as to which specific "correspondence" constitutes the alleged agreement to arbitrate. Consequently, we have seined the statement of facts and the argument in Plaintiff's brief in an effort to identify the missives which—according to him—create the contract.

This tedious task would have been easier if we had a transcript of the hearing at which this issue was submitted to the trial court. However, neither side filed one, so we do not know whether Plaintiff formally presented

---

1. The 1986 version of RSMo was in effect when the events pertinent to this case occurred.

any documents to the trial court at that hearing. All we have is a legal file and six supplemental legal files containing a multitude of documents, accompanied by the parties' loquacious briefs.

Plaintiff's statement of facts tells us: "[I]t was not until mid–1990 that the parties entered an agreement to arbitrate." In support of that proclamation, Plaintiff refers us to three letters. The earliest, in chronological order, is dated May 22, 1990. According to Plaintiff, it is from Four Seasons' lawyer to a lawyer who was then representing Plaintiff.[2] It reads, in pertinent part:

> "My client is willing to arbitrate that dispute as long as it is binding arbitration, that is, binding on the parties without the possibility of appeal. My client is willing to allow that arbitration to occur in Kansas City, Missouri. The arbitration should cover the actual, original dispute your client presented to my client.
>
> Should your client agree to arbitration, please notify me accordingly so that we can structure the arrangement."

The next letter in chronological order is dated June 6, 1990. It is from Plaintiff's lawyer to Four Seasons' lawyer. It reads:

> "I have your letter of May 22, 1990, and have conversed with my client accordingly. He is willing to arbitrate the dispute under binding arbitration in Kansas City, Missouri, subject to our agreement of the terms. Please call me so that we can structure the arrangement. My client is out of the city until next week and therefore, the matter can wait until then. I look forward to your call."

The third letter cited by Plaintiff is dated July 20, 1990. It is from Four Seasons' lawyer to Plaintiff's lawyer. It reads, in pertinent part:

> "I am in receipt of your letter of July 9, 1990[3] and enclosed materials. It would appear that we would come under the

Commercial Arbitration Rules of the American Arbitration Association. Since we have previously agreed to split the arbitration fee, the only thing we have to decide upon is your client's demand to determine the amount of the fee under the administrative fee schedule. I assume your client would be the one to sign the demand for arbitration form. Alternatively, we could both file a Submission to Dispute Resolution form. If this is acceptable to your client, I suggest we proceed to complete such a form. I do not find one in the forms you forwarded to me with your letter. If your client is agreeable to this procedure, please obtain such a form and have your client complete his portion and then forward it to me for us to complete ours. I can then return it to you with our half of the fee. Please notify me what that amount will be."

Thereafter, says Plaintiff, he "devoted his efforts in this matter to arranging a face to face meeting with Defendant rather than immediately taking steps to complete the submission form." According to Plaintiff, he hoped such a meeting would "resolve the dispute and ... obviate the necessity for arbitration proceedings."

As we understand Plaintiff's statement of facts, the next relevant event occurred April 11, 1991, when Four Seasons' lawyer sent Plaintiff a letter. The letter reads, in pertinent part:

> "It is my understanding that my client had offered you an exchange of property which was acceptable to you. In addition, my client was willing to absorb the cost of past assessments on the unit you currently own. However, it is my understanding that you demanded, in addition to the aforementioned, eighteen (18) months of assessment-free living prospectively, that is, from the date of the settlement. My client has indicated to me that it is unable to agree to that demand.

---

2. We find nothing in the record—such as it is—demonstrating that the authenticity of any letter therein was ever established in the trial court. However, as we comprehend Four Seasons' brief, the authenticity of those letters is undisputed. Accordingly, we assume the letters mentioned in this opinion are genuine.

3. Obviously, there was correspondence during the interval between the June 6, 1990, letter and the July 20, 1990, letter. Plaintiff's statement of facts does not direct us to the intervening correspondence.

If you are still willing to accept the unit offered in exchange and the agreement to be absolved of any liability for past assessments on your current unit, please notify immediately. Otherwise, we would suggest that we begin the arbitration proceedings as soon as possible."

The next document to which Plaintiff directs us is captioned: "American Arbitration Association, SUBMISSION TO ARBITRATION." Although it is dated May 1, 1991, Plaintiff avers he sent it to Four Seasons on April 27, 1991. The document reads, in pertinent part:

"The named Parties hereby submit the following dispute to arbitration under the COMMERCIAL ARBITRATION RULES of the American Arbitration Association:

Determination of amounts due pursuant to and arising from the purchase of an interest in a condominium unit and related actions at the Racquet Club of the Lodge of the Four Season [sic] in Lake Ozark, Missouri. Since the parties are in agreement that the amount to be paid to the Abrams in consideration of their relinquishment of all rights and interests in said condominium unit is at least $50,-000.00, from which the Abrams' [sic] must pay any balance due pursuant to a Deed of Trust on said unit, arbitration of only any amounts in excess of said $50,000.00 is requested so that the AAA Administrative Fees and costs are assessed only on the excess amount, if any."

The above document is signed by Plaintiff. Beneath his signature is a signature block for Four Seasons and a signature block for "Four Seasons Racquet Club Property Owners Association." Neither of those blocks bears a signature.

Plaintiff concedes the May 1, 1991, document contains "two additional items which had not been specifically discussed in the prior correspondence confirming the Arbitration Agreement." Plaintiff describes those items thus:

**4.** The "past Association dues" were apparently the basis of a subsequent judgment in *Four Seasons Racquet and Country Club Property Owners Association v. Abrams,* 858 S.W.2d 835 (Mo.App. S.D.1993).

"[F]irst, the inclusion of a related third party, the property owners association, as an additional named party to the arbitration proceeding; and second, the inclusion of a minimum repurchase amount which was considerably less than the value of Defendants' [sic] current offer, the sole purpose of which was to reduce the initial arbitration fees to be paid upon the Submission to Arbitration Form."

The next document identified in Plaintiff's statement of facts is a letter from Four Seasons' lawyer to Plaintiff dated May 8, 1991. It contains a "counteroffer" which we need not relate. Insofar as pertinent to Plaintiff's claim of error, the letter reads:

"In the event that you find this counteroffer unattractive, please be advised that the arbitration forms which you signed are not in keeping with what we had discussed for arbitration. We are not willing to arbitrate your liability for past Association dues. We did agree that we would allow the arbitrator to consider the amount of past Association dues that you may owe or have paid in considering the entire matter. Our position was and remains that we have no direct control over the Association dues other than to indemnify you for the amount of same should that be the ruling of the arbitrator.[4]

In addition, we have never agreed that we owe you any sum of money. Therefore, we would be unable to, in effect, admit that we owe you $50,000.00 in beginning the arbitration process. As with any arbitration, in a dispute of this type, both parties begin at their respective positions."

Plaintiff states that after the above letter, he and "another representative" of Four Seasons reached a settlement agreement which would "render the arbitration unnecessary." Consequently, says Plaintiff, he wrote Four Seasons' lawyer a letter May 27, 1991, confirming the settlement.[5] The portion of that letter pertinent to the current appeal reads:

**5.** Obviously, the purported settlement was never consummated.

"[A]lthough it should now be academic, pursuant to your May 8 letter, I will confirm our verbal agreement to the two nominal changes you have made in the Submission to Arbitration form that I signed and submitted to you on April 27. While your letter confirms our prior discussion regarding the fact that the Arbitrator will determine your client's liability for my past Homeowner's Association assessments, thereby negating the necessity of their being a party to our arbitration proceedings, you still may not be clear as to why I used the $50,000.00 figure as a minimum repurchase price for my unit. As I have stated, this was inserted exclusively to reduce our respective initial AAA filing fees."

If we have correctly deciphered Plaintiff's statement of facts and argument, the documents from which we have quoted, beginning with the letter of May 22, 1990, are the ones on which he bases his hypothesis that the parties entered into a written agreement to resolve their quarrel by arbitration.

The reason for Plaintiff's effort to convince the trial court—and us—that he and Four Seasons entered into a *written* agreement to submit their controversy to arbitration is found in § 435.350,[6] which reads:

"A written agreement to submit any existing controversy to arbitration ... is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract...."

Plaintiff asserts: "The trial court appeared to base its determination on the fact that there was no single document signed by all parties."

We do not draw that inference from the trial court's order. The order simply declares: "§ 435.350 ... requires a written agreement to arbitrate." Nothing in the order indicates the trial court had the notion that the statutory requirement for a written agreement could be satisfied only by a single document.

Plaintiff maintains:

"[T]he law is clear that there need not be a single document. As long as the intention of the parties to submit their controversy to arbitration is manifested in writing, the writing does not have to take the form of a single signed document, but may be contained in writings exchanged between the parties."

In support of that premise, Plaintiff cites a Maine case and a Texas case. We searched for a Missouri case on the subject. The closest one we found was *Jim Carlson Construction, Inc. v. Bailey,* 769 S.W.2d 480 (Mo.App. W.D.1989), holding that a standard form construction contact incorporated by reference a provision in another document requiring arbitration of all contract disputes.

That is consistent with Missouri cases holding that a written contract need not consist of only one document. *State v. Thorn,* 851 S.W.2d 601, 605[2] (Mo.App. S.D.1993); *Detko v. City of Plattsburg,* 791 S.W.2d 424, 425[2] (Mo.App. W.D.1990). A contract may be made up of several separate instruments. *Thorn,* 851 S.W.2d at 605[2]; *State ex rel. Foster v. Griffin,* 246 S.W.2d 396, 398[5] (Mo. App.1952).

Four Seasons does not challenge Plaintiff's theory that the "written agreement" required by § 435.350 can consist of more than one document. We therefore assume, *arguendo,* that Plaintiff is right. However, as shall become apparent *infra,* it is unnecessary to decide whether he is.

Before explaining why that is so, we pause to consider the scope of our review. As this was a judge-tried case, our review is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1].

That standard of review requires us to ascertain whether the trial court's ruling that Plaintiff failed to prove the existence of a valid agreement to arbitrate is based on a determination of fact or merely on an application of the law.

6. As observed in footnote 1, *supra,* the 1986 version of RSMo was in effect when the events pertinent to this case occurred. Section 435.350 was carried forward unchanged in RSMo 1994.

Four Seasons says: "The trial court had before it a factual dispute: Did the parties reach a meeting of the minds on the issue of arbitration?"

Superficially, that issue appears to present a question of fact. However, in adjudicating that issue the trial court was not required to resolve any conflicts in the evidence or decide any credibility issues.

As best we can determine from the record furnished us, the parties presented no testimony in the trial court, but instead submitted Plaintiff's motion to compel arbitration entirely on documents, the authenticity of which was undisputed.[7] Consequently, we espy no factual dispute the trial court had to resolve. The trial court's task was simply to determine whether the documents submitted to it established that the parties entered into a written agreement to submit the controversy to arbitration.

*L.B. v. State Committee of Psychologists,* 912 S.W.2d 611, 617 [10, 11] (Mo.App. W.D. 1995), cited by Four Seasons, holds:

> "The existence of a contract necessarily implies that there has been a 'meeting of the minds' between the parties which the court can determine by looking to the intentions of the parties as expressed or manifested in their words or acts. 'Whether a contract is made and, if so, what the terms of the contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties.'" (Citations and emphasis omitted.)

On the record handed us by the parties, we hold the trial court's order denying Plaintiff's motion to compel arbitration was based on an application of law to undisputed facts. Accordingly, we must affirm the order unless the trial court erroneously declared or erroneously applied the law.

The parties cite a plethora of cases; however, all of the rules of law pertinent to Plaintiff's claim of error are found in two: *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253 (Mo.App. W.D.1985), and *L. B.,* 912 S.W.2d 611.

*Village of Cairo* explains:

> "The obligation to arbitrate ... rests on free assent and agreement.... Thus, the subsistence and validity of an arbitration clause is governed by the usual rules and canons of contract interpretation.... '[A] party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'"

685 S.W.2d at 258 (citations omitted).

*L.B.* says:

> "The essential elements of an enforceable contract [include] ... mutuality of agreement....
>
> ....
>
> The term 'mutuality of agreement' implies a mutuality of assent by the parties to the terms of the contract. The nature and extent of a contract's essential terms which form the basis of the parties' mutual assent must be certain or capable of being certain. If the parties reserve any of the essential terms of the purported contract for future determination, there is no valid, binding agreement....
>
> [N]egotiations or preliminary steps towards a contract do not themselves constitute a contract....
>
> [A] contract is not complete until the proposition of one is presented to the other and accepted as presented. The acceptance of a proposition presented by one party must be accepted by the other in the form tendered; if the acceptance purports to add or alter the proposition made, then neither party is bound."

912 S.W.2d at 617 (citations omitted).

Applying the above rules to the documents relied on by Plaintiff, starting with the May 22, 1990, letter from Four Seasons' lawyer to Plaintiff's lawyer, we see that Four Seasons was willing to arbitrate if the arbitration was "binding on the parties without the possibility of appeal," and covered "the actual, original dispute" (whatever that was).

---

**7.** Footnote 2, *supra.*

The June 6, 1990, letter authored by Plaintiff's lawyer expressed Plaintiff's willingness to arbitrate "subject to our agreement of the terms." The letter asks Four Seasons' lawyer to call Plaintiff's lawyer so the duo "can structure the arrangement."

Obviously, the letters identified in the two preceding paragraphs reserve essential terms for future determination and thus constitute only negotiations toward a contract to submit the controversy to arbitration. *L. B.*, 912 S.W.2d at 617.

The July 20, 1990, letter authored by Four Seasons' lawyer expresses the notion that the arbitration would "come under the Commercial Arbitration Rules of the American Arbitration Association." It points out that the parties "have to decide ... [Plaintiff's] demand to determine the amount of the fee under the administrative fee schedule." The letter manifests an assumption that Plaintiff would "sign the demand for arbitration form." Alternatively, the letter proposes both parties file a "Submission to Dispute Resolution form." The letter adds, "If your client is agreeable to this procedure...." These provisions clearly demonstrate there were essential terms upon which the parties had not agreed as of July 20, 1990. Consequently, there was still no mutuality of agreement, hence no contract. *L. B.*, 912 S.W.2d at 617.

That is confirmed by Plaintiff's response to the April 11, 1991, letter from Four Seasons' lawyer. The April 11 letter suggested that if Plaintiff rejected a settlement proposed by Four Seasons, the parties "begin the arbitration proceedings as soon as possible."

Instead of going to arbitration after the April 11 letter, Plaintiff sent Four Seasons the "SUBMISSION TO ARBITRATION" form dated May 1, 1991. As reported earlier, Plaintiff concedes that document contains two "items" unmentioned in earlier correspondence. As these were new subjects, it is obvious no agreement existed regarding them as of May 1, 1991.

That is conclusively shown by the letter of May 8, 1991, from Four Seasons' lawyer to Plaintiff, which emphatically states that the "arbitration forms" signed by Plaintiff "are not in keeping with what we had discussed for arbitration." Inasmuch as the "SUBMISSION TO ARBITRATION" form signed by Plaintiff was not accepted by Four Seasons as tendered, no contract was yet made. *L. B.*, 912 S.W.2d at 617.

The final letter on which Plaintiff relies is his letter to Four Seasons' lawyer May 27, 1991. Plaintiff's reply brief says: "[E]ven if there had previously been no agreement to arbitrate, or if some action by any of the parties prior to that time had constituted revocation or rescission [of] the agreement, my May 27, 1991, letter constitutes acceptance of [Four Seasons'] offer to arbitrate."

The flaw in Plaintiff's argument is that his letter of May 27, 1991, refers to a "verbal agreement" regarding two changes Four Seasons allegedly made to the "Submission to Arbitration form" dated May 1, 1991, signed by Plaintiff. As best as we can determine from the record, Plaintiff showed the trial court no document signed by a representative of Four Seasons setting forth those changes. Thus, Plaintiff's May 27, 1991, letter is, at most, only a confirmation of an alleged oral agreement.

We find nothing in Plaintiff's brief indicating he presented the trial court any document from a representative of Four Seasons setting forth the two changes allegedly made by Four Seasons to the May 1, 1991, "Submission to Arbitration form." Consequently, contrary to Plaintiff's argument, there is no written "offer to arbitrate" from Four Seasons which Plaintiff's letter of May 27, 1991, could have accepted.

It is thus evident that the trial court did not err as a matter of law in holding that Plaintiff failed to prove the existence of a written agreement between him and Four Seasons to submit the controversy to arbitration.[8] Because only written agreements are enforceable under § 435.350, the trial court

---

**8.** We assume, but need not decide, that such an agreement can consist of more than one document.

properly denied Plaintiff's motion to compel arbitration.

The order appealed from is affirmed.

PREWITT, P.J., and SHRUM, C.J., concur.