**Irl B. BARIS, Respondent/Cross–
Appellant.**

v.

**Ralph LAYTON and Loraine Layton,
Appellants/Cross–Respondents,**

No. ED 76562.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 20, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 5, 2001.

Application to Transfer Denied
May 29, 2001.

V. Gina Tocco, Tocco & Associates, Ballwin, MO, for appellant.

Baris Law Firm, Irl B. Baris & Jon M. Baris, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Ralph Layton ("Father") appeals the judgment rendered in favor of Irl Baris ("Attorney") in Attorney's action to collect a fee for legal services performed pursuant

to an oral contract. Attorney cross-appeals the judgment notwithstanding the verdict entered in favor of Loraine Layton ("Mother") and the denial of his motion for prejudgment interest. We dismiss Father's appeal, reverse the judgment entered in favor of Mother and remand for an award of prejudgment interest.

■ We will first address Attorney's motion to dismiss Father's appeal for failure to comply with various subparagraphs of Rule 84.04. Although many of these deficiencies were later corrected by leave of court, we cannot overlook or excuse Father's failure to submit a fair and concise statement of the facts relevant to the questions presented for determination as required by Rule 84.04(c). In his appeal, Father challenges the sufficiency of the evidence to support the verdict, the size of the verdict, admission of alleged "perjured" testimony, jury instructions (which were not set forth in the argument in violation of Rule 84.04(e)), and error in bifurcating the trial. In order to comply with Rule 84.04(e), it was thus incumbent upon Father to provide this court with a statement of the evidence in the light most favorable to the verdict, not simply recount Father's version of events. *Hoer v. Small,* 1 S.W.3d 569, 572 (Mo.App.1999). Virtually all of the evidence supporting the verdict is found in Attorney's testimony. Father's brief wholly ignores Attorney's version of events. It omits entirely Attorney's testimony as to specific conversations he had with Father and Mother on which Attorney based his claim for breach of an oral contract.

■ Father's justification for omitting Attorney's version of events is that he submitted only those facts that he and Attorney do not dispute in order to comply with the requirement of Rule 84.04(e) that the recitation of facts be "without argument." Father cites no authority for this novel interpretation of the phrase "without argument" and we find that Father's interpretation is specious. As we have explained on more than one occasion, Rule 84.04(c) requires a concise statement of the evidence most favorable to the verdict, not just the evidence which was not disputed. *Id.; Evans v. Groves Iron Works,* 982 S.W.2d 760, 762 (Mo.App.1998). Omission of virtually all of the facts supporting the verdict warrants dismissal of the appeal. *Id.* Accordingly, we sustain Attorney's motion and dismiss Father's appeal.[1]

■ We now turn to Attorney's cross-appeal. In his first point, Attorney contends the trial court erred in sustaining Mother's motion for judgment notwithstanding the verdict. Review of the trial court's ruling on a motion for judgment notwithstanding the verdict is performed regarding the evidence in the light most favorable to the jury's verdict. *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 461 (Mo. banc 1998). We look at all favorable evidence and reasonable inferences flowing therefrom, discarding all unfavorable evidence and inferences. *Id.* We will affirm the trial court's grant of the motion only where we find that the plaintiff failed to make a submissible case. *Jungerman v. City of Raytown,* 925 S.W.2d 202, 204 (Mo. banc 1996). A presumption exists favoring the reversal of a motion for judgment notwithstanding the verdict. *Faust v. Ryder Commercial Leasing & Servs.,* 954 S.W.2d 383, 388 (Mo.App.1997). We leave the ruling intact only where the favorable evidence and inferences are so strongly against the plaintiff as to leave no

---

1. Lest our action dismissing Father's appeal give rise to further litigation, we observe that nothing in the course of our review indicated that any of the points raised by Father would warrant reversal.

room for reasonable minds to differ as to the result. *Id.*

 Essentially, a motion for judgment notwithstanding the verdict is a challenge to the submissibility of the case. *Allstates Transworld Vanlines, Inc. v. Southwestern Bell Tel. Co.,* 937 S.W.2d 314, 316 (Mo.App.1996). Thus, the motion is properly granted where the evidence does not support one or more elements of the plaintiff's case. *Breckenridge v. Meierhoffer–Fleeman Funeral Home, Inc.,* 941 S.W.2d 609, 611 (Mo.App.1997). In order to make a submissible case, the plaintiff must present substantial evidence supporting each element of his or her claim. *Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224, 225 (Mo. banc 1994).

 In order to make a submissible case of breach of contract, the complaining party must establish: 1) the existence of a valid contract; 2) the rights and obligations of the respective parties; 3) a breach; and, 4) damages. *Rice v. West End Motors, Co.,* 905 S.W.2d 541, 542 (Mo. App.1995). The evidence in the light most favorable to the verdict was as follows:

Attorney has been practicing law for over 50 years. In 1982, Father contacted Attorney concerning a federal grand jury investigation. Attorney represented him as requested. There was no written contract for the representation, and Father paid the fee.

On Friday, January 17, 1986, Father called Attorney with reference to the arrest that day of his daughter, Kathleen Sparks, now known as Kathleen Hall ("Daughter"). He explained briefly that Daughter had been arrested for attempting to murder her husband, with whom she was involved in a pending dissolution proceeding. Attorney explained that he was preparing for a trial commencing on the following Tuesday in Rolla, Missouri, and made an appointment for Father to come to his office on Saturday, January 18, with Daughter. On Saturday, Attorney talked briefly with Father and Daughter together in an attempt to get the initial facts and to gain the confidence of Daughter. He was briefly advised as to the facts, that an appearance bond had been signed by Father and Mother, that there was a domestic suit involving a three-year old son, and there were other related problems.

Attorney then met privately with Daughter for about three hours while Father waited in the outer office. After that conference, he brought Father back into the private office. Attorney was informed that the criminal case was pending, that there had been tape recordings of conversations between Daughter and the alleged hit-man, and that there was a bitter dispute over the custody of Daughter's child. Attorney explored the impact of the arrest upon the access to the child by Daughter, Mother and Father. They also discussed an adult abuse case that had been filed at the time of the arrest, a habeas corpus proceeding with reference to the child, and other matters. Attorney learned that another attorney was representing Daughter in the dissolution proceeding. Attorney testified that in this conference Father was supportive of Daughter and said that he would support her, not put her out in the street, and that she would have what she needed.

Attorney then discussed fees with Daughter and Father. In that conference, Father said that he would pay her expenses with the hope that perhaps they could collect from Daughter's husband, but Father promised to pay what likely would be substantial fees. Father was also concerned about his personal liability because some events connected with the alleged attempted murder had taken place in his

house, and Father indicated that he also needed protection. Father promised to pay the fee according to the rates discussed ($175.00 per hour for Attorney's time, $25.00 per hour for paralegal time, plus reimbursement for expenses) and to send a check for $5,000.00 while Attorney was in Rolla. There was no written agreement because it was not customary at that time for Attorney to have a written agreement where he was being paid on an hourly basis.

While Attorney was in trial in Rolla, he was informed by his office that a check for $5,000.00 had been received, and he instructed his secretary to make an appointment for Daughter to come to the office on Saturday, January 25, 1986. She did come in at that time, accompanied by Mother, to whom Attorney was introduced. Attorney met privately with Daughter for about four hours and then walked her out to the outer office. Mother asked if Attorney had received a check from her husband, and then stated that they would pay what was needed to protect their daughter and get back their grandson. Mother told Daughter in Attorney's presence that she and her husband would take care of everything. She also gave Attorney the names of some witnesses and said that she might know an investigator who could work on the case.

Attorney testified to all of the services he performed. He represented Daughter in the criminal case and soon became involved in other matters concerning Daughter and her parents. He investigated a pending adult abuse case and a habeas corpus proceeding, and subsequently was advised that a replevin action had been filed by Daughter's husband's automobile agency for a vehicle which had been in the possession of Daughter. Father and Mother were joined as defendants and Attorney testified as to services he rendered in connection with that case.

After consulting with Father, Mother, Daughter and her dissolution counsel concerning the wisdom of having one lawyer handling all of the matters, Attorney also undertook the representation of Daughter in the dissolution proceeding. Attorney testified to numerous appearances in court and the special problems that developed, particularly with reference to custody and visitation of the minor child who had been turned over to Daughter's husband. Included among the work which he did was to defend against two petitions for writ of prohibition filed in this court, and an appeal of a pendente lite (PDL) award, including attorney's fees, which had been ordered in favor of Daughter. *See Sparks v. Sparks*, 768 S.W.2d 563 (Mo.App.1989) (en banc). In addition, Attorney represented Daughter in an appeal to this court of Daughter's request for custody of the child. *See Sparks v. Sparks*, 747 S.W.2d 191 (Mo.App.E.D.1988). Attorney applied for transfer to the Missouri Supreme Court in each case, which was denied, and eventually filed a petition for writ of certiorari to the United States Supreme Court in the PDL matter, but certiorari was denied. *See Sparks v. Sparks*, 493 U.S. 957, 110 S.Ct. 372, 107 L.Ed.2d 358, (1989), *reh'g. denied*, 493 U.S. 1038, 110 S.Ct. 766, 107 L.Ed.2d 781 (1990).

Much time was consumed in the criminal proceedings. Daughter had been indicted and her bond was signed by Mother and Father. The proceedings progressed and Attorney prepared for trial, but four days prior to trial, the prosecutor nolle prossed the charges. Several months later, Daughter was again indicted. Father and Mother again signed the bond pledging their house worth in excess of $200,000 as security on a $50,000 bond. Attorney again prepared for trial. Again, three or four days prior to trial, the State nolle

prossed the charges and the criminal case was terminated.

Another issue that took a substantial amount of time throughout the period of representation by Attorney involved the temporary custody and visitation of the minor child. Much time was spent in securing visitation for Daughter, Mother and Father. For a long period of time the visitation could only be in the presence of Mother and Father. As a result, they were able to maintain substantial contact with their grandchild, which was one of their major desires when they first discussed the case with Attorney.

After Attorney recovered from a heart attack in June 1989, he reviewed the substantial amount of time that he had already devoted to the case and the small amount of money which he had received. Up to that point he had been paid $13,000.00 by three checks, two of which were signed by Father and one by Mother. Each check was made payable to Daughter and she endorsed it to Attorney. In addition, there was a check for $1,000.00 signed by Mother, payable directly to an accounting firm for services which were needed in connection with examining financial records.

Attorney discussed the need for additional funds with Daughter and asked her to discuss it further with her parents. Attorney did agree to file the petition for writ of certiorari because of the approaching deadline, and he did so, but certiorari was denied.

Shortly thereafter, in February 1990, Daughter advised Attorney that she had retained another attorney. Attorney met with the new attorney and arranged to deliver two large boxes of his files, including video tapes, tape recordings, pleadings, etc., to Daughter, for which she signed a receipt. At that time he also filed a memorandum of withdrawal as attorney and presented a bill to Daughter in his office, showing a balance due of $182,677.56.

Thereafter, Attorney attempted to collect from Daughter's husband by testifying in the subsequent dissolution and property division proceeding to seek an award of attorney's fees against him. The decree did not award any attorney's fees to either side. Attorney also unsuccessfully attempted to collect from Daughter's husband when he filed for bankruptcy.

Attorney testified that the services he performed and expenses incurred were necessary and the fees charged were reasonable. He called Joseph Howlett, an attorney in St. Louis County, Missouri, who testified that the fees were reasonable and that in 1986 it was not customary for an attorney involved in criminal proceedings and domestic proceedings to have written contracts with clients. The jury rendered a verdict in favor of Attorney and against Father and Mother for the full amount claimed. Attorney moved for an award of prejudgment interest and Father and Mother moved for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court denied Attorney's and Father's motions but granted Mother's motion for judgment notwithstanding the verdict on the ground that the evidence did not establish mutuality of agreement.

 Attorney urges that, under the aforementioned standard of review, he presented substantial evidence supporting the existence of a valid contract between Mother and himself. We agree. The essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and, (5) mutuality of obligation. *Hyatt v. Trans World Airlines, Inc.,* 943 S.W.2d 292, 296 (Mo.App. 1997). The trial court did not dispute the

competency of the parties to contract, the subject matter of the agreement, the existence of legal consideration, or the mutuality of obligation. Instead, it stated mutuality of agreement was lacking. The term "mutuality of agreement" implies a mutuality of assent by the parties to the terms of the contract. *See Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.,* 925 S.W.2d 932, 937 (Mo.App.1996). Attorney testified that both Father and Mother assented to the terms of his representation of Daughter, as well as agreed to reimburse Attorney for fees incurred in pursuit of her defense. If it believed Attorney's testimony, the jury was entitled to find that Mother specifically ratified Father's earlier promise that they would jointly take care of Attorney's fee. This evidence, viewed in the light most favorable to the jury's verdict, supports the finding of a contractual relationship between Attorney and Mother. The trial court, therefore, erred in sustaining Mother's motion for judgment notwithstanding the verdict. On remand, we direct that the trial court reinstate the judgment against Mother.

 In his second point on cross-appeal, Attorney asserts the trial court erred in denying his motion for increase of judgment to include prejudgment interest in contravention of section 408.020 RSMo 1994. Questions of law are matters reserved for de novo review by the appellate court, and we therefore give no deference to the trial court's judgment in such matters. *Boillot v. Conyer,* 861 S.W.2d 152, 155 (Mo.App.1993).

 Under section 408.020, prejudgment interest is only awardable on liquidated claims. *See Schnucks Carrollton Corp. v. Bridgeton Health and Fitness, Inc.,* 884 S.W.2d 733, 740 (Mo.App.1994). A liquidated claim is one which is fixed and determined or readily ascertainable by computation or a recognized standard. *Id.*

 In his petition for breach of contract, Attorney sought $182,677.56 in damages based upon the hours he incurred representing Daughter plus various expenses. Father and Mother disputed their liability. The mere existence of a dispute relative to liability, however, does not render a claim unliquidated. *Ohlendorf v. Feinstein,* 670 S.W.2d 930, 935 (Mo.App. 1984). While Mother and Father's liability might have been in question, the amount of damages sought by Attorney was not. *See Lundstrom v. Flavan,* 965 S.W.2d 861, 866 (Mo.App.1998). Attorney sought $182,677.56 in both a demand letter from his attorney, Edward Karfield, and in his petition for breach of contract. Attorney's claim was fixed, determined, and, therefore, liquidated. *Compare H & B Masonry Co. v. Davis,* 32 S.W.3d 120 (Mo.App. 2000) (prejudgment interest may not be awarded where the amount of damages is unclear).

 Section 408.020 allows a creditor prejudgment interest on liquidated claims only after demand of payment is made. *General Aggregate Corp. v. LaBrayere,* 666 S.W.2d 901, 909 (Mo.App.1984). Although the demand need be in no certain form, it must be definite as to amount and time. *A.G. Edwards & Sons v. Drew,* 978 S.W.2d 386, 397 (Mo.App.1998); *see Schnucks Carrollton Corp.,* 884 S.W.2d at 740 ("Section 408.020 allows interest on payments due under an oral agreement if a demand has been made.")

 Attorney contends prejudgment interest should run from March 30, 1990— the date he returned Daughter's files and delivered her a statement stating the amount due. Attorney, however, did not demand reimbursement from Father and Mother at that time. Attorney first demanded payment from Father and Mother on March 27, 1995 in the form of Edward

Karfield's demand letter. Thus, prejudgment interests should run from March 27, 1995 (the date of the demand letter) to March 19, 1999 (the date of the jury's verdict).

■ "The award of prejudgment interest in a case in which section 408.020 is applicable is not a matter of court discretion; it is compelled." *Holtmeier v. Dayani*, 862 S.W.2d 391, 407 (Mo.App.1993) (quoting *California & Hawaiian Sugar v. Kansas City Terminal Warehouse Co.*, 788 F.2d 1331, 1335 (8th Cir.1986)). Accordingly, the trial court erred in denying Attorney's motion for increase of judgment to include prejudgment interest. This point is reversed and remanded with directions to enter judgment for Attorney with prejudgment interest, as provided in section 408.020, running from March 27, 1995.

GARY M. GAERTNER, P.J., and GEORGE W. DRAPER III, J., concur.