PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

EDDIE L. HIGHTOWER,

*Plaintiff-Appellee,*

v.

GMRI, INCORPORATED,

*Defendant-Appellant.*

No. 01-1302

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-00-187-5-BR)

Argued: September 26, 2001

Decided: November 14, 2001

Before WILKINSON, Chief Judge, and NIEMEYER and
KING, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Niemeyer and Judge King joined.

## COUNSEL

**ARGUED:** Keith Ashley Warren, FORD & HARRISON, L.L.P.,
Memphis, Tennessee, for Appellant. Carmen J. Battle, Fayetteville,
North Carolina, for Appellee. **ON BRIEF:** Carl K. Morrison, David
P. Knox, FORD & HARRISON, L.L.P., Memphis, Tennessee, for
Appellant. Walter T. Johnson, Jr., Greensboro, North Carolina, for
Appellee.

**OPINION**

WILKINSON, Chief Judge:

Defendant GMRI, Inc. appeals the district court's denial of its motion to compel arbitration. Because Plaintiff Hightower agreed to the binding arbitration provision in GMRI's Dispute Resolution Procedure ("DRP") by, *inter alia*, acknowledging receipt of the DRP materials and remaining employed after the DRP became effective, we reverse and remand with instructions to compel arbitration.

I.

Plaintiff Eddie Hightower began employment with the Olive Garden, which is owned and operated by Defendant GMRI, Inc., in March 1998. In June 1998, he was assigned to an Olive Garden restaurant in Fayetteville, North Carolina where he served first as the service manager and then as the culinary manager.

In August 1998, Hightower attended a mandatory weekly restaurant meeting. The parties dispute what actually occurred at this meeting. GMRI states that the meeting was a DRP "roll out" to inform employees at the Fayetteville franchise about the implementation of the DRP as the exclusive means of resolving employment disputes. Yet, Hightower claims that only one percent of the meeting was devoted to the DRP and that the GMRI representative who conducted this portion of the meeting stated that there would be more information provided at a DRP training session in the future.

However, it is undisputed that Hightower attended the August meeting and signed an attendance sheet acknowledging receipt of GMRI's DRP materials. The top of the form that Hightower signed stated: "I have attended a DRP meeting and have received the information in regards to DRP."

GMRI's DRP became effective on August 3, 1998. GMRI's Dispute Resolution Procedure consists of four steps: (1) open door policy for informal review of work-related disputes; (2) peer review; (3) mediation; and (4) binding arbitration. As a manager, Hightower was

responsible for informing employees that by continuing to work after August 3, 1998 they were accepting the DRP. However, Hightower claims that he never trained any employees about the DRP.

Hightower was fired on November 17, 1998. On December 14, 1998, Hightower voluntarily submitted racial and religious discrimination claims for resolution under the mediation portion of the DRP. However, no settlement agreement was reached and Hightower refused to proceed to the fourth step of the DRP process, arbitration. Instead, he filed a charge of discrimination with the EEOC, which subsequently issued a "right to sue" letter on December 17, 1999.

On March 20, 2000, Hightower filed this suit against GMRI in the U.S. District Court for the Eastern District of North Carolina alleging discriminatory conduct under Title VII of the Civil Rights Act of 1964 and the Thirteenth Amendment. On August 18, 2000, GMRI filed a motion to dismiss or, in the alternative, to stay Hightower's action and compel arbitration under the DRP. GMRI sought relief pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4.

On February 12, 2001, the district court, without explanation, denied GMRI's motion to compel arbitration. GMRI appeals from this order pursuant to 9 U.S.C. §§ 16(a)(1)(A)-(B), which provide for an appeal from an interlocutory decision refusing to grant a stay under 9 U.S.C. § 3 or denying an order to compel arbitration under 9 U.S.C. § 4.

On April 26, 2001, the district court granted a motion to stay proceedings pending appeal to this court. In this order, the district court explained that it denied GMRI's motion to compel arbitration because there was conflicting evidence as to whether Hightower assented to the DRP process. Therefore, the district court concluded that no arbitration agreement could be found to exist.

II.

In the FAA, 9 U.S.C. §§ 1-16, Congress endorsed arbitration as a less formal and more efficient means of resolving disputes than litigation. The Supreme Court has noted that the FAA represents "a liberal

federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Because FAA provisions are mandatory, courts must compel arbitration when a valid arbitration agreement exists. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This prevents parties from rushing to court whenever the prospect of arbitration appears uninviting. To allow them to do so would undermine the clear federal directive in support of arbitration.

### A.

In order for a court to compel arbitration, the court must first find that an arbitration agreement exists between the parties. If an agreement is found to exist, the court must then decide whether the dispute at issue falls within the scope of the agreement. To determine whether the parties agreed to arbitrate, courts apply state law principles governing contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). There is no dispute that North Carolina law controls in this case and that the present dispute would fall within the scope of GMRI's DRP.

Under North Carolina law, a valid contract "requires offer, acceptance, consideration, and no defenses to formation." *Koltis v. N.C. Dep't of Human Res.*, 480 S.E.2d 702, 704 (N.C. Ct. App. 1997). At issue in the present case is whether there was mutual assent, established by way of offer and acceptance, to the DRP program such that an agreement to arbitrate was formed between GMRI and Hightower.\* There is no dispute that GMRI intended to be bound by its DRP. Therefore, we are required to determine whether, under North Carolina law, Hightower also intended to be bound by the DRP.

North Carolina has expressed strong support for utilizing arbitration to settle disputes. *Johnston County, N.C. v. R.N. Rouse & Co.*, 414 S.E.2d 30, 32 (N.C. 1992). This "strong public policy" has led the North Carolina courts to conclude that "where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Martin v. Vance*, 514 S.E.2d 306,

---

\*Hightower does not contend that consideration was lacking or that there is a defense to contract formation.

309 (N.C. Ct. App. 1999). Thus, North Carolina law directs us to favor arbitration in cases in which the facts support the conclusion that the parties formed an arbitration agreement.

B.

The facts of this case plainly indicate the presence of an arbitration agreement between GMRI and Hightower. It is undisputed that Hightower attended the August, 1998 DRP meeting and signed an attendance sheet acknowledging receipt of the DRP materials. After he learned that the DRP was the exclusive method for resolving employment disputes, Hightower continued working at the Olive Garden for approximately three months. These facts lend support to GMRI's assertion that Hightower knew of and assented to the DRP.

Indeed, the Court of Appeals of North Carolina has held in similar circumstances that continuing employment after learning of the existence of a DRP constitutes an employee's agreement to be bound by an arbitration agreement. In *Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879 (N.C. Ct. App.), *review denied*, 539 S.E.2d 288 (N.C. 1999), the court of appeals held that a plaintiff who received a copy of the company's dispute resolution procedure in the mail and continued work for less than three months after its effective date was bound by the arbitration provision in the dispute resolution procedure. *Id.* at 882. The plaintiff was bound despite the fact that she did not sign the agreement. *Id.* at 882-83. The *Howard* court noted that the plaintiff had received actual notice of the terms of the arbitration agreement and had previously submitted a claim for resolution under the DRP. The court concluded that this evidence was "sufficient to show plaintiff knew that the terms of the DRP would apply to her should she continue in her employment, and that by doing so, plaintiff mutually assented to the program." *Id.* at 882. In fact, under North Carolina law, "[c]ontinued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to the binding arbitration agreement contained therein." *King v. Oakwood Home, Inc.*, No. Civ. 1:99CV0059, 2000 WL 1229753 (M.D.N.C. Aug. 3, 2000); *see also Howard*, 516 S.E.2d at 882-83.

The facts of the present case closely parallel those in *Howard*. Hightower signed an attendance sheet at the August 1998 meeting

acknowledging receipt of the DRP materials. Thus, he had actual notice of the DRP and knew that his assent to the DRP was a condition of continued employment with GMRI. After acknowledging receipt of the DRP information, Hightower continued to work for GMRI. By continuing employment with GMRI for three months after he knew that the terms of the DRP would apply to him, Hightower demonstrated acceptance of the DRP. Therefore, Hightower is bound by its final, binding arbitration provisions.

If there was any doubt that Hightower assented to binding arbitration, it is also telling that he was responsible for informing other employees that reporting to work after the DRP's August 3, 1998 implementation date constituted acceptance of its terms. And Hightower initially brought his current claim under the mediation provision of the DRP before deciding he would rather go to court. Accordingly, the evidence shows that Hightower agreed to be bound by the arbitration provision in the DRP.

### III.

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to stay Hightower's action and compel arbitration.

*REVERSED AND REMANDED*