David K. KUNZIE, Appellant,

v.

JACK–IN–THE–BOX, INC.,
Respondent.

No. ED 92974.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 9, 2010.

Donald K. Murano, The Murano Law Firm LLC, Michael Waxenberg, St. Louis, MO, for Appellant.

James N. Foster, Jr., Brian C. Hey, McMahon Berger, P.C., St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

David Kunzie (Appellant) appeals from the trial court's denial of his motion to set aside arbitration proceedings on the basis that the trial court erred in finding that a validly formed arbitration agreement existed between Appellant and his former employer, Jack-in-the Box, Inc. (Respondent). We find that Appellant's continued employment alone did not objectively manifest his intent to be bound to Respondent's proposed arbitration policy. Thus, we reverse the judgment and remand for an evidentiary hearing to determine if addi-

tional facts exist which, in conjunction with Appellant's continued employment, sufficiently demonstrate that Appellant accepted Respondent's arbitration policy to be a new condition of his employment.[1]

### Background

Appellant was an at-will employee of Respondent from April 23, 1987, until his termination on November 16, 2005. On January 16, 2007, Appellant filed a petition alleging that Respondent, in violation of the Missouri Human Rights Act,[2] wrongfully terminated him on the basis of his age and gender.

On March 2, 2007, Respondent filed a motion to dismiss or, in the alternative, to compel arbitration. Respondent argued that "as a condition of his employment, [Appellant] signed an agreement wherein he agreed that he would arbitrate any and all claims or disputes that arose out of or were related to the termination of his employment." Because Respondent failed to attach the alleged arbitration agreement (Arbitration Agreement) to its initial motion, Respondent filed another motion on March 14 which contained the Arbitration Agreement and requested that it be incorporated as an exhibit to its initial motion to compel arbitration.

The seven-page Arbitration Agreement was titled "Jack In The Box Dispute Resolution Agreement." The last page of the agreement was titled "Receipt and Acknowledgement." A clause on this page stated, "I understand that my employment by Jack in the Box and its affiliates is automatically subject to the terms of this Agreement if I continue my employment ... after 1–14–2004." The signature and printed name on this page reads "Dave

---

1. Respondent's Motion to Dismiss Plaintiff's Appeal for Failing to Comply with Rule 84.04(D) is denied.

2. Section 213.055, RSMo 2000.

Kunze." Appellant filed a memorandum in opposition, contending that he "signed the arbitration provision under duress and as such the arbitration provision should be deemed null and void."[3]

On June 6, 2007, the trial court granted Respondent's motion, finding that "the parties entered into a valid agreement containing an arbitration provision, that the agreement is supported by consideration, that [Appellant's] claims are within the scope of the agreement, and that the agreement is not unconscionable."

On October 29, 2007, Appellant filed a motion for rehearing to set aside arbitration proceedings. Upon a "more recent and closer review of the document," Appellant contended that Respondent had produced a "sham Arbitration Agreement." Attached to the motion, Appellant provided an affidavit in which Appellant stated that he did not sign the Arbitration Agreement. Appellant stated that his surname, Kunzie, was misspelled in the signature block of the receipt and acknowledgement page of the Arbitration Agreement; his name was spelled "Kunze." Furthermore, Appellant stated that the receipt and acknowledgement page of the Arbitration Agreement incorrectly listed his social security number; the third and eighth numerals were incorrect.

On November 21, 2007, the trial court entered an order providing for an evidentiary hearing to be held on February 1, 2008 to "determine the nature and application of the arbitration clause." On January 17, 2008, Respondent filed a motion to set aside the evidentiary hearing based upon the parties' Request for Admissions.

In response to Respondent's Request for Admissions, Appellant stated that he attended a January 14, 2004 meeting in which Respondent presented the Arbitration Agreement; that he did not sign the Arbitration Agreement; and that he thereafter continued his employment with Respondent. On January 29, 2008, the trial court granted Respondent's motion to set aside the evidentiary hearing scheduled for February 1 and ordered the parties to proceed with arbitration.

After an arbitration proceeding in which the arbitrator found against Appellant,[4] Respondent prayed the trial court to enter final judgment dismissing each of Appellant's employment claims on March 23, 2008. On April 15, Appellant filed a second motion for rehearing to set aside arbitration proceedings. Again, Appellant contended that Respondent produced a "sham" agreement that did not correctly reflect Appellant's signature or social security number. Appellant also contended that, prior to the present litigation, Respondent had never disclosed six of the seven pages of the Arbitration Agreement to him. On April 21, the trial court entered a final order and judgment denying Appellant's second motion for rehearing to set aside arbitration proceedings and dismissing Appellant's petition with prejudice. Relying solely on Appellant's admissions and without making any factual determinations pursuant to an evidentiary hearing, the trial court explained that:

[Appellant] has admitted he was aware of the alternative dispute resolution provision and continued his employment with [Respondent] after having been made aware of the provisions. By con-

---

3. Appellant's memorandum further explained that "the [arbitration] agreement was signed by [Appellant] under [Respondent's] threat of termination if [he] did not sign the agreement on or about, January 14, 2004."

4. On March 6, 2008, the arbitrator, finding "that unlawful discrimination … was not a 'contributing factor' in connection with the decisions made by [Respondent]," denied Appellant's claims.

tinuing employment, [Appellant] accepted the terms of the provision. *Berkley v. Dillards, Inc.*, 450 F.3d 775 (8th Cir. 2006). [Respondent's] motion for judgment based on the arbitration decision and award is granted.

Appellant filed a notice of appeal on April 30, 2008. This appeal follows.

### Points on Appeal

Appellant raises three points on appeal. In his first point, Appellant claims that the trial court erred in setting aside the evidentiary hearing it scheduled for February 1, 2008, to determine the Arbitration Agreement's validity because the agreement lacked mutual assent. In his second point, Appellant claims that the trial court erred in granting Respondent's motion to compel arbitration because the Arbitration Agreement was not validly formed. In his third point, Appellant re-iterates his claim that the trial court erred in finding that the Arbitration Agreement was validly formed. While Appellant formally presents three points relied on, our discussion is limited to his first point, as it is dispositive.

### Standard of Review

 "When faced with a motion to compel arbitration, the motion court must determine whether the valid arbitration agreement *exists* and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 (Mo.App. W.D. 2008) (emphasis added). "In determining whether or not a valid arbitration agreement exists, we apply 'the usual rules of state contract law and canons of contract interpretation.'" *Id.* (quoting *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006)). Whether or not Respondent's motion to compel arbitration should

have been granted is a question of law, and our review is de novo. *Nitro Distrib.*, 194 S.W.3d at 345.

 However, because the Missouri Uniform Arbitration Act (MUAA) specifically authorizes the trial courts to "proceed summarily" and conduct evidentiary hearings, if needed, to resolve an issue of whether an arbitration agreement existed or not, *see infra*, our review of the trial court's determination as to the existence of an agreement itself is analogous to that in a court-tried case. *See Creech v. MBNA America Bank. N.A.*, 250 S.W.3d 715, 716 (Mo.App. S.D.2008) (where a trial court conducted an evidentiary hearing pursuant to the MUAA to determine if an agreement to arbitrate existed and summarily found in the negative, the appellate court applied the "court-tried case" standard of review); *see Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.*, 925 S.W.2d 932, 936 (Mo.App. S.D.1996). Therefore, the "judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Abrams*, 925 S.W.2d at 936 (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

### Discussion

#### I. Agreement to Arbitrate

 "Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003). "It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have *agreed* to arbitrate claims." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 21 (Mo.App. W.D.2008) (emphasis in original).

Nothing precludes the possibility of an employer and its employees from entering into an enforceable agreement to arbitrate claims, *id.* at 22, so long as the agreement exhibits the essential elements Missouri requires of a valid contract. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006) ("Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate.").[5] Such elements include "offer, acceptance, and bargained for consideration." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988); *Arrowhead*, 243 S.W.3d at 535 ("An obligation to arbitrate is based on assent and agreement."). Thus, in the absence of a valid contract between the parties to arbitrate certain disputes, no action to compel arbitration will lie.

## II. Trial Court Procedure in Determining the "Making" of an Arbitration Agreement

Both the Federal Arbitration Act (FAA) and MUAA contain provisions outlining the procedure trial courts are to follow when determining whether the parties have formed an arbitration agreement.

■ The "FAA unambiguously provides for a jury trial when factual disputes arise in federal courts regarding the making of an arbitration agreement." *Nitro Distrib.*, 194 S.W.3d at 351 (citing 9 U.S.C. Section 4 (2000)). However, "the procedural provisions of the FAA do not bind state courts unless the state procedures in some way defeat the rights granted by Congress." *Id.* "Thus, [Missouri courts] will look to the procedures set out in the MUAA rather than the FAA." *Id.*; *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 630 (Mo.App. E.D.1996) ("Although the FAA creates substantive rights to be enforced in state courts, Missouri courts are not bound by the procedural provisions of the FAA.").

■ The procedure Missouri trial courts are to follow is set forth in section 435.355(1) of the MUAA, which states:

On application of a party showing [a written agreement to submit any existing controversy to arbitration], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if *the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised* and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

Section 435.355(1), RSMo 2000 (emphasis added).[6] The Missouri Supreme Court has held that the term *"proceed summarily"* contemplates proceedings "conducted without the usual formalities and without a jury." *Nitro Distrib.*, 194 S.W.3d at 351 (emphasis added). Even so, where there are "disputed factual issues [as to the agreement's existence], it is necessary to conduct an evidentiary hearing." *Id.*[7]

---

5. "Under both the [Federal Arbitration Act] and [the MUAA], a written agreement to submit a present or future dispute to arbitration is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." *McIntosh v. Tenet Health Sys. Hosp., Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo.App. E.D. 2001).

6. All further statutory references are to RSMo 2000, unless otherwise indicated.

7. In explaining when the need for an evidentiary hearing exists "given the summary nature of the proceedings," the Missouri Supreme Court held that a trial court did not error in "declin[ing] to entertain live witnesses ... [where] the [trial] court was provided with more than 3,700 pages of documents, affidavits, deposition transcripts and

### III. Trial Court's Determination that Appellant and Respondent "Agreed" to Arbitration

In this case, the trial court had before it: (a) the seven-page Arbitration Agreement purportedly signed by Appellant; (b) Appellant's affidavit stating that his true signature and name was not reflected in the Arbitration Agreement; (e) Appellant's affidavit stating that his social security number was not accurately reflected in the Arbitration Agreement; (d) Appellant's response to a request for admissions that he attended a January 14, 2004 meeting in which Respondent proposed arbitration as an alternative dispute resolution, that several employees refused to sign the Arbitration Agreement at the meeting, and that he never signed the Arbitration Agreement.

Though Appellant's argument as to whether or not he signed the Arbitration Agreement has not been entirely consistent throughout his pleadings,[8] the trial court failed to conduct an evidentiary hearing or make any factual findings in this regard. Rather, the trial court's judgment was premised solely upon its finding that, as a matter of law, Appellant's knowledge and conduct of continuing his employment after being presented with the Arbitration Agreement constituted Employee's acceptance of the contract. As mentioned above, the trial court explained:

> [Appellant] has admitted he was aware of the alternative dispute resolution provision and continued his employment with [Respondent] after having been made aware of the provisions. By continuing his employment, [Appellant] accepted the terms of the provision.

other materials with which to resolve the factual disputes." *Nitro Distrib.*, 194 S.W.3d at 352.

*Berkley v. Dillard's, Inc.*, 450 F.3d 775 (8th Cir.2006).

Thus, the question before us is whether the trial court was correct in holding that, under Missouri contract law, an employee's continued employment after being presented with an arbitration agreement from his employer stating that alternative dispute resolution is a condition of continued employment, decisively evidences the employee's intention to he bound by the arbitration agreement.

█ This question has not yet been addressed by Missouri courts, although several federal circuit courts of appeals have split on the issue. At the outset, we acknowledge that decisions of the federal courts merit our respect but do not bind us, *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995), especially when our determination rests upon an interpretation of state contract law.

### A. Federal Circuit Opinions Holding Continued Employment Constitutes Acceptance to an Arbitration Agreement

In *Berkley v. Dillard's Inc.*, an employer implemented an arbitration program and distributed documents summarizing its new policy in June 2001. 450 F.3d at 776. One of the documents specified that by "continuing employment with [the employer], [the employee has] agreed to accept [the arbitration program]." *Id.* Several days later, an employee, who had been working for the employer since August 2000, refused to sign a form entitled "Acknowledgement of Receipt of Rules for Arbitration." *Id.* The employer then advised this employee that her refusal to sign the document had no effect because the arbitration program applied automatically

8. First, Appellant contended he signed the Arbitration Agreement under duress. Subsequently, he denied signing the agreement and suggested the signature was a forgery.

to all employees who continued their employment. *Id.* The Eighth Circuit agreed, holding that "[b]y continuing her employment, [the employee] accepted the terms of the arbitration program." *Id.* at 777.[9]

In *Hightower v. GMRI, Inc.,* an employee, who had been working for an employer for several months, attended a meeting in which his employer presented the implementation of arbitration as the exclusive means of resolving employment disputes. 272 F.3d 239, 241–42 (4th Cir.2001). The employee signed an attendance sheet acknowledging his receipt of documents distributed at the meeting. *Id.* at 242. The employee continued working for the employer for three months. *Id.* at 242. Applying North Carolina contract law, the Fourth Circuit held that "[b]y continuing employment with [the employer] for three months after he knew that the terms of the [employer's new dispute resolution procedure] would apply to him, [the employee] demonstrated acceptance of the [dispute resolution procedure]." *Id.* at 243.

*B. Federal Circuit Opinion Holding Continued Employment Does Not Constitute Acceptance to an Arbitration Agreement*

In *Bailey v. Fed. Nat'l Mortgage Ass'n,* an employer sought to compel arbitration pursuant to an arbitration policy that it unilaterally promulgated after the employee was hired. 209 F.3d 740, 741 (D.C.Cir.

2000). The employer contended that, because the policy itself was proclaimed to be a condition of employment, the employee implicitly agreed to arbitrate statutory claims of employment discrimination when he continued to work for the employer after the issuance of the arbitration policy. *Id.* The employee argued that he never gave his assent to be bound by the employer's new arbitration policy. *Id.*

The district court found that "because there was no meeting of minds between the parties, there was no arbitration agreement to enforce." *Id.* The D.C. Circuit affirmed, holding that the employee "did nothing whatsoever to embrace the employer's proposal." *Id.* at 746. "[The employee's] continued employment with [the employer] surely was not an indication that he intended to be bound by the arbitration policy." *Id.* at 747.

*C. Determination of Missouri Contract Law*

 In Missouri, the essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Baris v. Layton,* 43 S.W.3d 390, 396 (Mo.App. E.D.2001). A mutual agreement is reached when "the minds of the contracting parties [ ] meet upon and assent to the same thing in the same sense at the same time." *Viacom Outdoor, Inc. v. Taouil,* 254 S.W.3d 234, 238 (Mo.App.

9. In *Berkley,* the Eighth Circuit purported to apply Missouri contract law. To support this statement of law, it provided citations to *Cook v. Coldwell Banker,* 967 S.W.2d 654, 657 (Mo. App. E.D.1998) and *Easy Returns Midwest Inc. v. Schultz,* 964 S.W.2d 450, 454 (Mo.App. E.D.1998).

The pertinent provision of *Cook* states: "[a]n offer to make a unilateral contract is accepted when the requested performance is rendered.... A promise to pay a bonus in return for an at-will employee's continued employment is an offer for a unilateral contract which becomes enforceable when accepted by the employee's performance." *Cook,* 967 S.W.2d at 657.

The pertinent provision of *Schultz* states: "[a]n employee's continuance in employment with employer, where there is no obligation to remain, and an employer's continuance of employment, where continuance is not required, supplies adequate consideration for a noncompetition agreement." *Schultz,* 964 S.W.2d at 454.

E.D.2008); *Arrowhead,* 243 S.W.3d at 535 (holding that the "existence of a contract necessarily implies that there has been a 'meeting of the minds' between the parties which the court can determine by looking to the intentions of the parties as expressed or manifested in their words or acts"). "A meeting of the minds occurs when there is a definite offer and an *unequivocal acceptance.*" *Guidry v. Charter Commc'n,* 269 S.W.3d 520, 528 (Mo.App. E.D.2008) (emphasis added).

██ As a general common law principle, in order for an acceptance to be effective, it "must be positive and unambiguous." 2 WILLISTON ON CONTRACTS § 6.10 (4th ed.2007). "Silence generally cannot be translated into acceptance." *Guidry,* 269 S.W.3d at 528.[10] The critical question when measuring if a party's words or conduct constitute acceptance "is whether the signals sent by the offeree to the offeror objectively manifest the farmer's intent to be presently bound." 2 WILLISTON ON CONTRACTS § 6.10 (4th ed.2007).

In this case, the trial court, relying on *Berkley's* interpretation of Missouri law, concluded that Appellant's decision to continue in Respondent's employ after obtaining knowledge of its proposed Arbitration Agreement as a new condition of employment rose to the level of an unequivocal acceptance. We disagree. Appellant's conduct, by itself, only evinced his intent to maintain the status quo. *See Bailey,* 209 F.3d at 747 (holding that the employee "signaled nothing when he remained in the employ of [his employer] following the issuance of the arbitration policy"). Without more, we do not find that the mere continuation of employment manifests the necessary assent to Respondent's terms of arbitration. In *Berkley,* the Eighth Circuit supported its decision with citations to two Missouri contract cases: *Cook v. Coldwell Banker* and *Easy Returns Midwest Inc. v. Schultz.* Both cases are distinguishable to the case at bar.

First, in *Cook,* we affirmed a jury verdict which awarded an employee money damages for her employer's breach of a bonus agreement. 967 S.W.2d at 655. The employee produced evidence that her employer offered to pay her a bonus if her sales earnings reached specified target levels. *Id.* at 656. After reaching the employer's specified target earnings, the employee accepted a position with another company. *Id.* at 656. The employer refused to pay the employee the bonus. *Id.* at 656. Because "[a] promise to pay a bonus in return for an at-will employee's continued employment is an offer for a unilateral contract which becomes enforceable when accepted by the employee's performance," we found that the employer breached the bonus agreement. *Id.* at 657–58. In the case at bar, unilateral con-

---

**10.** Silence and inaction will operate to bind the offeree to a contract in only four categories of cases:

First, when the offeree, with a reasonable opportunity to reject offered goods or services, takes the benefit of them under circumstances which would indicate to a reasonable person that they were offered with the expectation of compensation. Second, when the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer. Third, when, because of previous dealings or otherwise, the offeree has reasonably led the offeror to understand that the silence or inaction is intended to manifest an acceptance and the offeror understands the silence in this manner. Fourth, when the offeree takes or retains possession of offered property, or otherwise acts inconsistently with the offeror's ownership rights, it will operate as an acceptance of the offered terms absent other circumstances suggesting a contrary intent.

2 WILLISTON ON CONTRACTS § 6.50 (4th ed.2007).

tract principles, i.e., promise for an act, do not apply. Respondent's proposed Arbitration Agreement specifically contemplates reciprocal promises, i.e., a bilateral contract, and not a promise in exchange for an act.[11]

Secondly, in *Schultz*, we found that a trial court erred in enforcing a noncompetition agreement against a former employee because the facts of the case were insufficient to show that it had a protectable interest in customer contacts in the geographic area claimed. 964 S.W.2d at 452. After disposing of the case on this basis, we further explained that "[a]n employee's continuance in employment ... supplies adequate *consideration* for a noncompetition agreement." *Id.* at 454 (emphasis added). In the case at bar, the dispositive issue is not one of consideration, but of the separate and necessary elements of mutual agreement and acceptance. The adequacy of consideration does not fulfill the requirement of unequivocal acceptance.

Thus, in finding that the Missouri cases upon which the Eighth Circuit relies to be inapplicable to the case at bar, we find *Berkley*'s interpretation of Missouri law as it pertains to an existing employee's acceptance of proposed arbitration agreement to be unpersuasive. Despite *Berkley*'s holding that the employee accepted the arbitration agreement by continuing her employment with Dillard's. *Berkley* included

a factual finding that, after the employee refused to sign the arbitration agreement, Dillard's then specifically informed her that her refusal did not affect the arbitration agreement, which applied automatically to all employees who continued their employment. *Berkley v. Dillard's Inc.*, 450 F.3d at 777.

■ As an employer, Respondent had a right to impose an arbitration policy as a new condition of employment. Appellant then had the right to either accept or reject Respondent's policy. If Appellant declined to accept the agreement, then there is no right to arbitration as a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. *Dunn Indus. Group, Inc.*, 112 S.W.3d at 421. Absent a violation of state or federal statutes addressing the employment relationship or public policy exceptions to the employment at will doctrine, the Respondent, as an at-will employer, then had the right to immediately terminate Appellant. In this case, the record indicates that there is an apparent dispute as to whether Appellant in fact signed, and thereby accepted, Respondent's Arbitration Agreement.[12] It is not disputed, however, that Appellant knew of Respondent's arbitration policy and, nonetheless, continued working. The trial court concluded that these facts alone evidenced Appellant's acceptance of the ar-

---

**11.** On the first page of the Arbitration Agreement, the third paragraph is entitled "Mutual Promise to Resolve Claims by Binding Arbitration." This paragraph envisions an exchange of promises to submit claims to arbitration; it states:

> In signing the Acknowledgement and Receipt, both the Company and the Employee agree that all claims or disputes covered by this Agreement must be submitted to binding arbitration, and that this binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.

> This promise to resolve claims by arbitration is equally binding upon the Company and the Employee.

**12.** Respondent maintains that it "has a plethora of evidence to support its position ... including complete deposition transcripts" that Appellant executed the entire Arbitration Agreement. Respondent's claims notwithstanding, no such evidence is contained in the record presented on appeal, as the trial court proceeded without conducting an evidentiary hearing.

bitration agreement.[13] Using the same logic, we could posit that an employee's continued employment without signing a proffered arbitration agreement reasonably supports a finding that Appellant rejected Employer's condition of arbitration. Appellant's rejection and continued employment, under basic contract principles, reasonably could be viewed as Appellant's counteroffer to Respondent that Appellant would continue his employment without being subject to Respondent's arbitration policy. Respondent's failure to then terminate Appellant's employment could be deemed to constitute an acceptance of such counter-offer. Without the ascertainment of additional facts, a trial court is unable to determine the intent of the parties. Moreover, without a finding that Appellant and Respondent agreed to submit to arbitration, Appellant cannot be required to arbitrate his dispute with Respondent. *Id.*

■ Accordingly, we hold that the manifestation of an existing employee's unequivocal intention to be bound by an employer's proposed arbitration agreement as a new condition of employment necessitates more than the employee's mere continued work to satisfy Missouri's meeting of the minds requirement. Here, the trial court's ruling was based solely upon Appellant's continued employment. No evidentiary hearing was conducted. Given the record before us, we hold the trial court's reliance on *Berkley* was misplaced, and find that the trial court erred in granting Respondent's motion for judgment based on the arbitration decision and award and denying Appellant's motion to set aside the arbitration award.[14]

*Conclusion*

Based on the foregoing, we reverse and remand this case to the trial court for an evidentiary hearing to render factual determinations as to whether Appellant through his words and/or conduct, unequivocally and objectively signaled an intention to be bound to the Arbitration Agreement presented by Respondent to its employees.

GEORGE W. DRAPER III, J., Concurs.

GARY M. GAERTNER, JR., J., Concurs in separate opinion.

GARY M. GAERTNER, JR., Judge, concurring.

I concur with the result, but I respectfully disagree that an at-will employee's refusal to sign an arbitration agreement is a "counter-offer" to be accepted or rejected by the employer. Rather, if Appellant did not consent to arbitration, then the agreement is unenforceable. and we need not address the issue of counter-offers. *See Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 435 (Mo. banc 2003) ("[a]rbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate"); *see also Guidry v. Charter Communications., Inc.,* 269 S.W.3d 520, 528 (Mo.App. E.D.2008) (when parties modify existing contract, it is only enforceable if there is mutual assent, i.e., meeting of minds; "meeting of the minds occurs when there is a definite offer and an unequivocal acceptance").

13. Whether or not Employee signed the arbitration agreement was of no consequence to the trial court's finding.

14. Despite its pronouncement of Missouri law, it appears that the *Berkley* court indeed

may have relied upon evidence of "something more" than the employee's mere continuation of employment following Dillard's presentation of the arbitration agreement to its employees.

Second, it is my opinion that the error below occurred not in relying on *Berkley v. Dillard's Inc.,* 450 F.3d 775 (8th Cir.2006), but in failing to adduce evidence sufficient to determine whether Appellant had accepted Respondent's offer to be bound by the Arbitration Agreement. I do not hold the view that *Berkley* stands for the proposition that an employee's decision to continue working after the employer presents an arbitration agreement—without more—decisively indicates that the employee intends to be bound by the arbitration agreement. Rather, *Berkley* presented a strong factual record of the employee's understanding that by continuing to work she was agreeing to abide by the arbitration policy. *Id.* at 776–77 (employer specifically discussed with employee that refusal to sign arbitration agreement did not constitute rejection of arbitration policy, and arbitration agreement itself stated that continuing employment acted as acceptance). Such a factual record was missing in the case at bar.

I would remand this case to the trial court for an evidentiary hearing. The trial court should determine, first, whether Appellant in fact signed the Receipt and Acknowledgement of the Arbitration Agreement. If the court finds that he did not sign the Receipt and Acknowledgement, then the court must determine at that hearing whether the facts establish Appellant's acceptance. If the evidence adduced upon remand shows that the Arbitration Agreement contractually and automatically applied to all employees who continued their employment, and that Appellant was aware that a refusal to sign did not constitute a rejection of the offer, then I believe that the trial court's reliance on the rationale in *Berkley* would not be misplaced.