PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MAERSK LINE, LIMITED,
          *Plaintiff-Appellee,*

v.

UNITED STATES OF AMERICA,
          *Defendant-Appellant.*

No. 07-1013

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(2:05-cv-00747-RBS)

Argued: November 1, 2007

Decided: January 28, 2008

Before GREGORY and DUNCAN, Circuit Judges, and
James A. BEATY, Jr., Chief United States District Judge
for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Judge Duncan and Judge Beaty joined.

## COUNSEL

**ARGUED:** Anne Lobell Murphy, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellant. John Early Holloway, HUNTON & WILLIAMS,
Norfolk, Virginia, for Appellee. **ON BRIEF:** Peter D. Keisler, Assis-
tant Attorney General, Chuck Rosenberg, United States Attorney,

Robert Greenspan, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

---

**OPINION**

GREGORY, Circuit Judge:

Plaintiff Maersk Line, Limited ("Maersk") sued Defendant United States of America ("United States") for breach of contract of carriage. The underlying dispute is maritime in nature involving the application of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.*, under the terms of the contract. After cross-motions for summary judgment, the district court granted Maersk's motion for summary judgment and denied the United States's motion for summary judgment. On appeal, the United States contends the district court erred in finding that the Halvorsen aircraft loader ("K-Loader") was a package for purposes of the liability limitation provision under COGSA which limits the carrier's liability to $500 per package. For the reasons that follow, we affirm the district court's decision.

I.

As the facts are straightforward, we adopt the statement of undisputed facts contained in the district court's opinion. *Maersk Line, Ltd. v. United States*, 460 F.Supp.2d 678, 679-680 (E.D. Va. 2006).

This controversy arose from the transport of seven K-Loaders[1] by Maersk from Charleston, South Carolina to Thumrait, Oman, pursuant to a Universal Services Contract, DAMT01-03-D-0124 ("USC-04"). The USC-04 is a standard form contract that the Military Surface Deployment and Distribution Command ("SDDC"), on behalf of the United States, offers to some fifteen carriers, including Maersk. Under the USC-04, various Department of Defense agencies may coordinate with the SDDC to ship cargo overseas.

---

[1]The Halvorsen aircraft loader ("K-Loader") is a large wheeled vehicle with an adjustable deck that is used to load cargo onto aircrafts. Each K-Loader weighs over 30,000 pounds and can lift up to 25,000 pounds of cargo.

On April 30, 2003, the SDDC offered the movement of the seven K-loaders from Charleston, South Carolina to Thumrait, Oman. Maersk accepted the booking on May 1, 2003. The booking was accomplished over the Internet through an electronic data interchange system called the Integrated Booking System ("IBS"). Pursuant to Clause 4.1.8 of the USC-04, the parties' contract consisted of the following documents in order of priority: (1) the USC-04; (2) the Transportation Control and Movement Document ("TCMD") and other shipping instructions; and (3) booking documents. The TCMD, issued by the SDDC, provided shipping instructions and was the only document received by Maersk that provided such instructions. The booking documents set the applicable freight rates, terms, and conditions for a particular shipment. Clause 3.1 of the USC-04 expressly incorporates COGSA into the parties' contract.

The K-Loaders were delivered to Maersk at Charleston, South Carolina on April 28 and 29, 2003. Either Maersk or its agents, employees, or contractors loaded each K-Loader onto a flat rack in preparation for ocean shipment. On May 16, 2003, the K-Loaders were loaded onto the MAERSK MISSOURI, which departed Charleston, South Carolina that same day and arrived in Salalah, Oman, on May 22, 2003. The K-Loaders were then transported by truck to Thumrait, Oman. Maersk did not provide a bill of lading to the SDDC until October 21, 2004.

One of the K-Loaders affixed to a flat rack sustained damages during the ocean voyage to Oman, and cost $31,279.60 to repair. The SDDC contacted Maersk regarding the damages during the summer of 2003. Maersk acknowledged the claim but asserted, in a letter dated August 20, 2003, that its total liability was limited to $500 per K-Loader pursuant to COGSA. The SDDC demanded payment of the full cost of repairs. On December 21, 2004, an SDDC contracting officer issued a "final decision," stating (1) that the K-Loaders were not "shipped in packages" within the meaning of COGSA, and (2) that the $500 limitation on liability under COGSA should, therefore, apply per measurement ton of cargo. Accordingly, the SDDC contracting officer calculated Maersk's liability as $26,312.50 (56.625 tons x $ 500.00 per measurement ton). The SDDC subsequently offset $26,359.30 (the original $26,312.50 plus $46.80 in interest) against amounts due to Maersk.

On December 21, 2005, Maersk filed a complaint against the United States, alleging that the United States's offset was "wrongful and/or a breach of contract." The parties filed cross-motions for summary judgment, and agreed that the case should be decided on summary judgment because no material facts were in dispute.

The district court concluded as a matter of law that the K-Loader was a COGSA package. The district court believed the K-Loader fell within the broad definition of the term "package" which the district court believed we had adopted in *Caterpillar Overseas, S.A. v. Marine Transport, Inc.*, 900 F.2d 714 (4th Cir. 1990). The district court also found that an examination of the parties' contract revealed that the parties intended the K-Loader to constitute a package. The district court then denied the United States's Motion for Summary Judgment and granted Maersk's Motion for Summary Judgment. The United States timely appealed.

## II.

Because summary judgment was clearly appropriate in this case, our review is limited to the district court's application of the law to the undisputed facts. We apply de novo review to the district court's legal determinations and clear error review for any inferences it drew from the underlying undisputed facts. *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 329 F.3d 359, 362-63 (4th Cir. 2003), *cert. denied*, 541 U.S. 577 (2004); *Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100, 102 (9th Cir. 1979).

## III.

Congress enacted COGSA in 1936 to help balance the interests of carriers and shippers by setting a limit to the liability which a carrier could contract away at a level which would discourage negligence or indifference on the carrier's part, yet provide reasonable protection to shippers. COGSA applies "to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. § 30701(13). Section 4 of COGSA, in pertinent part, reads:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection

with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

*Id.* at § 30701(4)(5).

Congress failed to define the term "package", and left no clues in either the statute itself or in any of the legislative history to help courts interpret the term. The Second Circuit defines package as "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo Limited v. S. S. Navigator*, 407 F.2d 152, 155 (2d Cir. 1968). This definition comports with the plain and ordinary meaning of the term.[2] In dicta in *Caterpillar Overseas, S.A. v. Marine Transport Inc.*, 900 F.2d 714, 722 (4th Cir. 1990), we

---

[2]If Congress intended that the term package have a technical definition, Congress could have assigned one but did not. "Legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." *Hartford v. Fire Ins. Co. v. Pacific Far East Line, Inc.*, 491 F.2d 960, 963 (9th Cir. 1974) (quoting *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 618(1944)). Since no specialized or technical meaning was ascribed to the word package, we must assume that Congress had none in mind and thus intended that this word be given its plain, ordinary meaning. *Id.* (citing *Malat v. Riddell*, 383 U.S. 569, 571 (1966); *See generally* 2A Sutherland Statutory Construction at 455-473 (7th ed. 2007).

observed that we found the Second Circuit's definition to be the best. We now as part of our holding in this case adopt the Second Circuit's definition.

The focus of our inquiry here then is the extent of preparation made to facilitate handling of the K-Loader. Maersk was not expected to drive the vehicle on or off the carrier, so the United States disconnected the battery, drained the fuel tank, placed a fire extinguisher inside, then left the K-Loader at the dock. Maersk then placed the K-Loader on a flat rack to facilitate lifting the K-Loader onto the ship. Thus, the only preparation done to facilitate handling was placing the K-Loader on a flat rack.

Clearly, whether the unit was placed on a flat rack cannot be dispositive because to do so would allow carriers, such as Maersk, to unilaterally convert cargo into packages to limit their own liability. However, under the facts of this case it seems this preparation was made because this was the only method for getting the K-Loader onto the ship. Maersk argues that both parties intended that the K-Loader be placed on a flat rack. While the United States argues that it did not intend that the K-Loader would be placed on a flat rack, it concedes that it knew and understood that this was the only way for Maersk to realistically lift the immobilized K-Loader onto the ship. Hence, as there is a dispute over the parties' intent, we must look to the parties' actions to settle the issue.

Language in the parties' contractual documents (i.e. the USC-04, the TCMD and booking documents) and the bill of lading indicate that the United States considered the K-Loader to be a package and that the United States also understood that some preparation for transportation to facilitate commercial handling would be required whether it was made by or for the United States. The TCMD provides a single Transportation Control Number ("TCN") for each K-Loader. Column 9 of the TCMD describes the K-Loader as "9. Pack Ve." It is undisputed that Pack refers to "package," while VE refers to "vehicle." *Maersk*, 460 F.Supp.2d at 681. Column 39 of the TCMD similarly refers to the K-Loader as "Type PACK VE," meaning "Type of Package: Vehicle." In the booking documents, each K-Loader is designated by its respective TCN. The K-Loader is referred to under the heading "Commodity Cd: 891 - Vehicles for Airfield Terminal," as

"Package Cd: VE-Vehicle." *Id.* In the remarks section of the booking documents, the SDDC stated "UNIT PACKAGED TO PREVENT DRIVING ON-OFF VESSEL." *Id.* Although the bill of lading issued for shipment was not part of the contract of carriage, it uses headings that refer to "Kind of Packages" and "No. of Containers or Pkgs." *Id.* The bill of lading also states "1 LOADER PER FLATRACK," ostensibly meaning one K-Loader per flat rack.

The United States argues that we should ignore the references to "package" in these other documents, but in contractual disputes every word is important. *See, e.g.*, *Supreme Council American Legion v. Gootee*, 89 F. 941 (4th Cir. 1898) (stating "great weight should be given in every case to the particular words of the contract to be construed"). The basic contract law principle *contra proferentem* counsels that we construe any ambiguities in the contract against its draftsman. *See, e.g.*, *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 389 (4th Cir. 2006) (stating "[a]mbiguity imposes costs on the parties to a contract: one party may rely on an errant interpretation, or find its original intent flouted if a dispute arises. *Contra proferentem* shifts the cost of ambiguity to the party best positioned to avoid and bear it . . ."). Thus, to the extent there is ambiguity in the meaning of these references to the term "package" in the other parts of the contract, we are compelled to construe the words against the United States.

The United States also argues that this interpretation of the TCMD and Booking documents conflicts with the USC-04, which has priority over the other contractual documents. This is correct. The USC-04 does take priority over the other contractual documents when there is a conflict. However, no conflict exists between the USC-04 and these other documents. Although containing a definition section, the USC-04 does not define the term "package" and because it is silent on this issue, this Court is free to look to the other contractual documents.

We are unpersuaded by the United States's argument that the price paid for shipping the K-Loader or the fact that Maersk did not charge the United States for the flat rack should dictate whether the parties considered the K-Loader a package. The mere fact that Maersk offered a discount to the United States does not impact the issue of

whether the K-Loader is a package for purposes of the COGSA liability limitation.

We also note that under COGSA the United States could have avoided the $500 per package limitation altogether by either (1) declaring the nature and value of the shipment at the outset or (2) negotiating with Maersk beforehand to provide a higher maximum amount of liability up to the amount of actual damage sustained.

IV.

For the foregoing reasons, we affirm the district court's decision.

*AFFIRMED*